IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JENNIFER SUZANNE DAWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:18-cv-00240 (LMB/MSN) |
| ) | |
| DELTA AIR LINES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is defendant Delta Air Lines, Inc.'s Motion to Dismiss [Dkt. No. 20] to which plaintiff, with the assistance of counsel, has replied. Dkt. No. 24. For the reasons that follow, the defendant's Motion to Dismiss will be granted.

## I. BACKGROUND

Initially proceeding pro se, plaintiff Jennifer Suzanne Dawson ("Dawson" or "plaintiff") first filed a Complaint for Employment Discrimination [Dkt. No. 1] on March 5, 2018, alleging that defendant Delta Air Lines, Inc. ("Delta" or "defendant") failed to promote her and subjected her to unequal treatment based on her gender and mental disability in violation Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 et seq. Dkt. No. 1-1 at 1–2. She also stated that, according to her "best recollection," she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2017. Dkt. No. 1 at 5. For relief, she sought $750,000 in damages and "retiree status to include lifetime flight benefits." Id. at 6. On July 23, 2018, Dawson filed an Amended Complaint ("Compl.") [Dkt. No. 17], again alleging Title VII and ADA violations, including claims of failure to promote and unequal conditions of

employment, but adding a claim of retaliation. Plaintiff is now seeking compensatory and punitive damages. Id. at 15.

As alleged in her Amended Complaint, Dawson began her employment with Delta as a Ready Reserve Agent on June 29, 2009. Compl. at 1.[1] She was later promoted to the positions of Sky Club Agent and Safety and Environmental Coordinator. Id. On March 3, 2014, Dawson reported to Delta her awareness of an allegedly illegal dumping of Glycol into an open storm drain at Reagan National Airport ("DCA"). Id. at 2. Dawson alleges that her immediate supervisor, Willie Whitley ("Whitley"), attempted to cover up the dumping and to prevent Delta's corporate headquarters from learning about the incident. Id. Beginning in March 2014, after learning that Dawson had reported the violation to Delta's corporate offices, Whitley and his team began a pattern of harassment and retaliation due to plaintiff being an "informant." Id. at 3. She alleges that her work was "intentionally sabotaged" because she was not given the accurate reports necessary for her assignments, and when she sought corrections, she was reprimanded. Id. at 3–4.[2]

According to the Amended Complaint, the first incident of sex discrimination or hostile work environment began in 2014 when Jason Joyner ("Joyner"), a supervisor in a different department, "sexually harassed [plaintiff] on several occasions" and would "constantly ask [her]

---

[1] Because plaintiff did not include page or paragraph numbers on the Amended Complaint, references to the ECF page numbers will be used.

[2] None of these allegations relate to gender discrimination or discrimination based on a disability. To the extent they suggest a whistleblower retaliation claim, they are time-barred. See Sasse v. U.S. Dep't of Labor, 409 F.3d 773, 782 (6th Cir. 2005) (finding that the Federal Water Pollution Control Act Amendments and the Solid Waste Disposal Act require complainants to file whistleblower complaints within 30 days after the alleged violation occurs (citing 42 U.S.C. § 6971(b) and § 7622(b)(1))).

2

questions about [her] underwear and breasts almost on a daily basis [sic]." Id. at 4. In June 2014, Joyner allegedly "trapped [plaintiff] in a room asking if [she] was wearing a thong ...." Id.

In May 2014, Dawson sought professional help for major depressive disorder and anxiety and told Whitley and her immediate supervisor, Vanessa Battle ("Battle"), that she would be using her personal time for medical appointments. Id. at 4. She also reported Joyner's sexual harassment to Whitley by showing him text messages, but "[n]othing was done." Id. The Amended Complaint alleges that from May 2014 to September 2016, Dawson reported to Human Resources that Whitley was retroactively editing her payroll to prevent her from receiving the overtime pay she was due. Id. at 5.[3] She alleges that she reported this problem to the Department of Labor and received some compensation but also a notice from Human Resources in August 2016 that she would receive nothing further. Id. She further alleges that, on an unspecified date, a "lesser qualified male," Greg Bricker, was hired, and she was required to train him. Id. at 5–6.

In August 2014, Dawson took time off under the Family and Medical Leave Act ("FMLA"). Id. at 6. She alleges that Delta denied her benefits, including health insurance, during this time. She also complains that she was not allowed to travel without prior approval, a policy she claims was not in place at DCA for other employees. Id. Delta alleges, and plaintiff has not disputed, that Dawson has been "on disability leave and has not been in the work environment" since October 2014. Defendant's Memo at 2.[4] Although Dawson was hospitalized in December 2014 for mental health reasons, she alleges that Battle denied her leave for the holidays, which

---

[3] The plausibility of this allegation is undermined by the uncontested fact that Dawson has been on medical leave since October 2014. Memorandum in Support of Motion to Dismiss Complaint ("Defendant's Memo") [Dkt. No. 21] at 2.
[4] In her Application to Proceed in Forma Pauperis [Dkt. No. 2], plaintiff acknowledges that she received half her base pay as disability payments from Delta until June 2017.

3

she had taken every year previously, and refused to pay Dawson vacation time that she allegedly was owed. Compl. at 6–7. Dawson also complains that, from 2016 to 2017, Battle "tried to gain [Dawson's] personal information through ... harassing e-mails," and when that was unsuccessful, she contacted Dawson's insurance provider, who did not provide Battle with Dawson's health information. Id. In May 2017, Dawson reported an on-the-job injury that allegedly was never reported to OSHA. Id.[5]

Dawson claims she reached out to Human Resources in August and October of 2017 to complain about Battle still being her supervisor but received no response. Id. at 8. On November 1, 2017, she filed a Charge of Discrimination with the Virginia Division of Human Rights. Dkt. No. 1-1 at 1. In her EEOC charge, plaintiff alleged that since August 2016 she has been subjected to a hostile work environment by Joyner, who has made "derogatory comments of a sexual nature through text messages," and that her complaints to her supervisor and to Human Resources went unanswered. Id.

She also alleged that she was subjected to a hostile work environment "based on protected class"[6] by her current supervisor, Battle. The only incident contributing to a hostile work environment was receiving "constant e-mails asking for personal information." Id. The charge also states plaintiff was denied a promotion without providing a date plaintiff applied for the promotion, the type of promotion, or any details about the person who received the promotion, other than that the person was "less qualified." Id. The charge does not make any claim of retaliation.

---

[5] Again, it is unclear how plaintiff could have sustained an on-the-job injury while she was on administrative leave.
[6] Plaintiff did not clarify what "protected class" was involved, but from the context, the Court assumes it was plaintiff's disability.

4

Plaintiff received a Notice of Right to Sue Letter from the EEOC on December 5, 2017,[7] and filed her initial pro se complaint with this Court on March 5, 2018. Dkt. No. 1.

## II. DISCUSSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant has moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Specifically, Delta argues that Dawson's Amended Complaint should be dismissed because her claims fall outside the scope of the EEOC charge, are time-barred, and fail to allege sufficient facts to support claims for discrimination or hostile work environment based on her gender or disability.

### A. **Standard of Review**

#### 1. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

According to Federal Rule of Civil Procedure 12(b)(1), a civil action must be dismissed whenever the court lacks subject matter jurisdiction. The plaintiff has the burden of establishing subject matter jurisdiction. Demetres v. E.W. Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015). Failure to exhaust administrative remedies under Title VII or the ADA deprives federal courts of subject matter jurisdiction over those claims. Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999). Defendant's argument that the allegations in the Amended Complaint exceed the scope of the EEOC charge because the charge contains an "earliest" date of discrimination and the Amended Complaint recites numerous incidents preceding that date is an argument that plaintiff has failed to exhaust administrative remedies with respect to incidents proceeding that date, which would deprive the Court of subject matter jurisdiction to address

---

[7] The Notice itself states that it was mailed on November 30, 2017. Id. at 3.

those incidents. This argument is evaluated under the 12(b)(1) standard. Edwards v. Murphy-Brown, LLC, 760 F. Supp. 2d 607, 613–14 (E.D. Va. 2011).

Although the EEOC charge does "define[] the scope of plaintiff's right to institute a civil suit," it does not "strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002) (finding that a complaint alleging race and sex discrimination exceeded the scope of a charge alleging only race discrimination). Dawson's EEOC charge alleged a hostile work environment due to inappropriate texts from Joyner and e-mails from Battle. Although she alleges that she has been discriminated against based on her sex and her disability, she fails to allege claims of retaliation. Therefore, defendant's argument limiting the scope of Dawson's complaint is correct as to her retaliation claim but unavailing as to the remainder of her allegations.

### 2. Failure to State a Claim Under Rule 12(b)(6)

According to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent that those allegations pertain to facts rather than to legal conclusions. Iqbal, 556 U.S. at 678. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully";

instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions." Twombly, 550 U.S. at 555.

## B. Analysis

Under Title VII, employees must file a charge with the EEOC within 180 days of an act of discrimination or retaliation before filing a civil lawsuit against their employer in federal court. 42 U.S.C. § 20000e-5(e)(1). This time limit is extended to 300 days in states, such as Virginia, that have state or local agencies, called deferral agencies, that enforce a law prohibiting employment discrimination on the same basis as Title VII. Id.; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002). If the employee fails to file with the EEOC or the deferral agency within this 300-day time limit, the employee is barred from relief. Edwards, 760 F. Supp. 2d at 618 (citing Morgan, 536 U.S. at 108). The Fourth Circuit has upheld strict adherence to time limits for discrimination claims. See Hamilton v. 1st Source Bank, 928 F.2d 86, 87–88 (4th Cir. 1990).

Dawson argues that the equitable principles enumerated in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), which held that compliance with the filing period is not a jurisdictional prerequisite but "a requirement subject to waiver as well as tolling when equity so requires," id. at 398, should be applied in her favor because defendant had sufficient notice of the claims against it and plaintiff was acting pro se at the time. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") [Dkt. No. 24] at 7. As defendant argues, it has not waived the statute of limitations. Defendant's Memo at 5. Plaintiff argues that she did not understand that she was a victim of harassment or discrimination before August 2016 because of

7

her "mental diagnoses," which include confusion and memory loss. Id. at 9–10. This argument is raised for the first time in her Opposition and is inconsistent with the allegation in the Amended Complaint that she complained about the sexual harassment to her supervisor in May 2014. Compl. at 4. Moreover, the Fourth Circuit has explicitly rejected the "discovery rule" and has held that the statute of limitations under Title VII begins to run when the act occurred, not from the time of discovery. Hamilton, 928 F.2d at 90. For these reasons, Dawson has failed to persuade the Court that the filing deadline should be overlooked.

Dawson filed her EEOC charge on November 1, 2017; therefore, she must be able to point to conduct occurring within 300 days of November 1, 2017, or after January 5, 2017, that constituted an act of discrimination or contributed to a hostile work environment based on her gender or her disability. Because Dawson has alleged a hostile work environment, under the continuing violation doctrine, so long as one hostile act falls within the filing period, the claim may go forward. Morgan, 536 U.S. at 101; see also Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 141 (4th Cir. 2007) ("Under Morgan, an incident falling within the applicable limitations period need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment.").

The majority of the incidents described in the Amended Complaint occurred in 2014. Compl. at 2–6. The only incidents alleged in the Amended Complaint that explicitly occurred after January 5, 2017 are that Battle, plaintiff's supervisor, attempted to gain access to plaintiff's personal health information and failed to report an unspecified on-the-job injury plaintiff alleges to have incurred. Id. at 7. These allegations are insufficient as pleaded. First, these acts bear no relation to plaintiff's gender. Furthermore, the Complaint does not explain exactly what personal information plaintiff's supervisor attempted to get or how plaintiff could have incurred an on-

8

the-job injury, given that she has been on continuous disability leave and away from the workplace since October 2014. On the record before the Court, neither of these acts "may reasonably be deemed to have been a continuing part of the discrimination" that created the hostile work environment plaintiff faced based on her gender or her disability. Gilliam, 474 F.3d at 141. In fact, it is unclear how a hostile work environment can occur for an employee who is on long-term leave from the workplace. See Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 439 (1st Cir. 1997) (finding that plaintiff "could not, during that period [of medical leave and layoff], have been subjected to workplace abuse, nor could her work performance at Carleton have been interfered with by abusive conduct while there"). In Morrison, the court could not find any authority recognizing a hostile work environment claim where "a single, brief encounter of this mildly offensive sort [being called "girlie" by her supervisor], at a time when the plaintiff was not actually working, and hence could not be affected in her workplace performance and conditions of employment, has been held to create a sexually hostile workplace environment." Id. Furthermore, Morrison's absence from the workplace was a little over a year, whereas Dawson has been out of the workplace for approximately four years.

As for plaintiff's disability, the only act related to that status is the vague claim that Battle has been trying to access plaintiff's health information. To state a claim for a hostile work environment in violation of the ADA, plaintiff must allege that (1) she was a qualified individual with a disability, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and (5) some factual basis exists to impute liability for the harassment to the employer. Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001).

The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2).

The Amended Complaint sufficiently alleges that plaintiff suffers from a qualified disability— "clinical major depressive disorder and anxiety"—which "substantially limits [her] daily life activity." Compl. at 4. Therefore, she satisfies the first requirement of a prima facie case. The unwelcome harassment includes Battle sending plaintiff "constant e-mails asking for personal information," denying her leave, and moving her parking space farther away from the building. Dkt. No. 1-1 at 1; Compl. at 6–7. These allegations are not sufficient under the ADA to constitute a plausible hostile work environment claim, which must be "subjectively and objectively hostile." Fox, 247 F.3d at 178. Simply labeling e-mails from her supervisor as "harassing" does not make them so. Compl. at 7. A "routine difference of opinion and personality conflict with one's supervisor" is not actionable. EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 316 (4th Cir. 2008). Moreover, nothing in the Amended Complaint explains how the terms, conditions, or privileges of employment have been changed by these actions, given that plaintiff has been on leave away from the workplace since October 2014. In short, none of these allegations are sufficient to clear the bar necessary to make out a hostile work environment claim. The facts alleged here do not even meet those in Smith v. Strayer University Corp., 79 F. Supp. 3d 591, 602 (E.D. Va. 2015), where the plaintiff, who suffered from an anxiety disorder, was reassigned, had her schedule changed, and was denied requests for accommodations. The Smith Court concluded that these actions did not rise to "the level necessary to constitute an objectively hostile work environment" under the ADA, id. at 603, and neither do the actions plaintiff alleges occurred. Because Dawson has not alleged facts supporting a plausible claim of hostile work environment based on her disability, her ADA claim must be dismissed.

Although some of plaintiff's claims sound as retaliation claims, plaintiff is barred from bringing a retaliation claim because it was not included in her EEOC charge. Dkt. No. 1-1. Moreover, as Delta points out, the only protected activity plaintiff describes as resulting in retaliation was her reporting an environmental violation sometime in 2014. Defendant's Memo at 1–2; Compl. at 2. As previously stated, any claim of retaliation for being a whistleblower is time-barred. While the Court is not unsympathetic to plaintiff's difficulties, the Court must find that Dawson's claims of discrimination and hostile work environment based on her gender and disability have not been timely filed and fail to satisfy the pleading requirements under Rule 12(b)(6).

## III. CONCLUSION

For the reasons stated above, specifically that the claims are time-barred and inadequate as a matter of law, defendant's Motion to Dismiss will be GRANTED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 26th day of October, 2018.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge